Anton PUHL, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (SHARON STEEL CORP.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 31, 1998.

Decided Feb. 11, 1999.

William G. Cohen, New Castle, for petitioner.

James D. Strader, Pittsburgh, for respondent.

Before FRIEDMAN, J., KELLEY, J., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

Anton Puhl (Claimant) appeals from an order of the Workers' Compensation Appeal Board (WCAB) affirming the decision of the workers' compensation judge (WCJ) to deny Claimant's Claim Petition. The WCAB's order also denied Claimant's Petition for Remand. We vacate the denial of Claimant's Claim Petition and reverse the denial of Claimant's Petition for Remand.

Claimant worked primarily as a crane operator with Sharon Steel Corporation (Employer) for a period in the mid–1950s, and again from May 23, 1965 until Employer's plant closed on October 18, 1992. (WCJ's Findings of Fact, No. 3.) On March 22, 1993, Claimant filed a Claim Petition seeking workers' compensation benefits as of October 19, 1992. In the Claim Petition, Claimant alleged that he suffered from mixed dust pneumoconiosis, asbestosis and chronic bronchitis as a result of his prolonged exposure to various dusts and metals, including asbestos, high carbon smoke and dust and coke dust and ashes, in the course and scope of his employment with Employer. Thus, Claimant alleged that he was entitled to benefits under sections 108(l) and 108(n) of the Pennsylvania Workers' Compensation Act[1] (Act), 77 P.S. §§ 27.1(l) and 27.1(n). Alternatively, Claimant claimed entitlement to benefits pursuant to section 301(c)(1) of the Act, 77 P.S. § 411(1), alleging that the exposure to the dusts and metals at work aggravated pre-existing damage caused by cigarette smoking.[2] (R.R. at 3a–4a; WCJ's Findings of Fact, Nos. 1, 5, 6.) Employer filed an answer denying the allegations in Claimant's Claim Petition, and hearings were held before a WCJ.

At the hearings, Claimant testified on his own behalf, describing his repeated exposure to asbestos, smoke and dust in the various departments to which Employer assigned him. (R.R. at 8a–14a; WCJ's Findings of Fact, No. 5.) Claimant further testified that Employer provided no respirator or breathing protection for employees until approximately 1985. However, Claimant stated that, even then, he wore breathing protection only about sixty-five percent of the time because, when such protection was worn, radio communication was impossible and the wearer constantly perspired. Further, Claimant indicated that beginning around 1989, breathing protection was made available only sporadically due to Employer's financial problems. Claimant stated that by 1990, he began to experience respiratory problems, finding himself short of breath, fatigued and coughing up mucous; however, Claimant testified that he has had no treatment for respiratory problems and takes no medication. According to Claimant, he was diagnosed as suffering from work-related pneumoconiosis and bronchitis on March 9, 1993. (R.R. at 14a–16a; WCJ's Findings of Fact, Nos. 8–10, 12.)

On cross-examination, Claimant admitted that he smoked from one-half to two packs of cigarettes a day from the time he was thirteen years old until he quit in 1964 at age thirty-five. Claimant testified that he had a smoker's cough prior to quitting but that the cough did not continue after he stopped smoking; he stated that he began coughing again in 1990. (R.R. at 18a; WCJ's Findings

---

1. Act of June 2, 1915, P.L. 736, *added by*, Act of October 17, 1972, P.L. 930, *as amended*, 77 P.S. §§ 27.1(l), 27.1(n). Section 108 enumerates those diseases considered as "occupational diseases" for purposes of the Act and includes:

 . . .

 (l) Asbestosis and cancer resulting from direct contact with, handling of, or exposure to the dust of asbestos in any occupation involving such contact, handling or exposure.

 . . .

 (n) All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population. . . .

2. Section 301(c)(1) of the Act provides, *inter alia*, for the right to compensation when an employee suffers an injury which arises in the course of employment and is related thereto and for such disease or infection that is aggravated, reactivated or accelerated by the injury.

of Fact, Nos. 7, 10.) Claimant further testified that he engages in very few activities at home and that his wife does most "things." With respect to non-work activities, Claimant also stated that he enjoys fishing and hunting but that, while he is still able to fish, he can no longer hunt due to difficulty walking. (R.R. at 16a, 19a; WCJ's Findings of Fact. No. 11.) The WCJ accepted Claimant's testimony as credible and persuasive. (WCJ's Findings of Fact, No. 14.)

Claimant also introduced the deposition testimony of Macy L. Levine, M.D., a Board-certified allergist and internist who first examined Claimant on March 9, 1993 at the request of Claimant's counsel. Based on Claimant's medical and occupational history, a physical examination and a review of diagnostic tests, films and medical reports, Dr. Levine diagnosed Claimant as suffering from pneumoconiosis due to mixed dust disease, asbestosis, chronic bronchitis and obesity. Further, Dr. Levine opined within a reasonable degree of medical certainty that a direct causal connection exists between Claimant's condition and his exposure to substances at work. (R.R. at 55a–56a; WCJ's Findings of Fact, No. 17.) Dr. Levine testified that Claimant might be able to work at a sedentary job in a clean environment, but he could not return to his pre-injury position because any mild or greater activity would cause Claimant significant shortness of breath. (R.R. at 63a–64a; WCJ's Findings of Fact, No. 20.)

Finally, Claimant presented the deposition testimony of Stephen N. Fisher, M.D, who is Board-certified in diagnostic radiology and as a "B" reader of pneumoconiosis films. Dr. Fisher testified that he reviewed chest x-rays of Claimant which revealed various abnormalities consistent with pneumoconiosis. (R.R. at 116a–26a; WCJ's Findings of Fact, No. 23.) Dr. Fisher then opined within a reasonable degree of medical certainty that the films produced a diagnostic impression of pneumoconiosis of both the silicosis and asbestos induced type, but he stated that, in general, one cannot arrive at a diagnosis of

pneumoconiosis by reviewing films alone. (R.R. at 127a; WCJ's Findings of Fact, No. 24.) In fact, on cross-examination, Dr. Fisher admitted that factors other than pneumoconiosis, such as blunt trauma to the chest, might conceivably cause pleural changes on an x-ray; however, he indicated that pneumoconiosis was the more likely cause of those abnormalities in Claimant's case. (R.R. at 128a–37a; WCJ's Findings of Fact, No. 25.)

In defense of Claimant's Claim Petition, Employer introduced the deposition testimony of Gregory J. Fino, M.D.,[3] who is Board-certified in internal medicine, pulmonary diseases and in the interpretation of chest x-rays for pneumoconiosis. Dr. Fino testified that he examined Claimant on June 9, 1993 and found no abnormalities whatsoever to suggest a chronic respiratory condition. In addition, a chest x-ray performed in conjunction with the examination revealed no abnormalities consistent with an occupational lung disorder, and three lung function tests were normal. (R.R. at 150a–54a; WCJ's Findings of Fact, No. 9.) Based on this information, Dr. Fino concluded within a reasonable degree of medical certainty that Claimant does not suffer from pneumoconiosis or asbestosis and has no pulmonary impairment at all. (R.R. at 155a, 158a; WCJ's Findings of Fact, No. 30.)

After consideration of the conflicting medical testimony, the WCJ made the following relevant findings:

35. The testimony of Dr. Fisher is equivocal and not persuasive on the issue of causation, and is therefore rejected as not credible and not persuasive. The unequivocal testimony of Dr. Fino is accepted as credible and persuasive. The testimony of Dr. Levine, who is an allergist, is rejected as not credible and not persuasive.

36. There is no credible and persuasive evidence in the record which indicates that [C]laimant suffers actual, total disability. Significantly, [C]laimant continued to work until October 18, 1992, the date that the

___

3. Employer also presented the testimony of William J. White, a former manager for Employer. White testified credibly that Claimant and other employees complained about the presence of as-

bestos in the workplace and that this material was removed from Claimant's work area in 1992. (R.R. at 24a–26a; WCJ's Findings of Fact, No. 15.)

plant shut down and he lost his job. Prior to this time, he worked overtime when so scheduled, and claims to have earned production bonuses. Aside from no longer hunting, [C]laimant testified that it is his wife's daily activities – not his respiratory problem – which prevent him from engaging in many day-to-day activities. Claimant also testified that he has not undergone actual treatment for his alleged, work-related respiratory problems, nor does he take medication. Moreover, Dr. Fino credibly and persuasively testified that [C]laimant is not disabled while even Dr. Levine's incredible and unpersuasive testimony indicates that [C]laimant might still be capable of performing some work activities in a clean environment.

37. Claimant is not totally disabled as a result of occupational disease.

(WCJ's Findings of Fact, Nos. 35–37.)

Accordingly, the WCJ denied Claimant's Claim Petition, concluding that Claimant had not sustained his burden of establishing that he was disabled as of October 19, 1992, either as a result of a work-related occupational disease, or as a result of a work-related aggravation of pre-existing respiratory damage caused by smoking. Claimant appealed the denial of his Claim Petition with the WCAB, and, while awaiting the WCAB's decision, Claimant filed a Petition for Remand or Rehearing based on the availability of new medical evidence. In an order dated May 30, 1997, the WCAB denied Claimant's request for remand and affirmed the WCJ's denial of Claimant's Claim Petition. Claimant now appeals to this court from both the denial of his remand request and the denial of benefits.

Initially, we will consider Claimant's argument that the WCAB improperly denied Claimant's Petition for Remand or Rehearing.[4] Claimant asserts that because he sought to introduce new medical evidence regarding his condition that was material, noncumulative and previously unavailable to him, the WCAB was required, in the interest of justice, to remand the case and allow Claimant to present this evidence to the factfinder.[5] On the other hand, Employer

---

4. In a workers' compensation case, the decision to grant or deny rehearing is within the discretion of the WCAB, and we will reverse that decision only for an abuse of that discretion. *UGI Corp. v. Workmen's Compensation Appeal Board (Wagner)*, 130 Pa.Cmwlth. 42, 566 A.2d 1264 (1989). Here, Claimant filed a Petition for Remand or Rehearing pursuant to sections 419 and 426 of the Act respectively, 77 P.S. § 852 and 871. In this regard, we note that a petition for rehearing under section 426 of the Act is properly filed only *after* the WCAB has issued a decision. Because Claimant filed his petition *before* the WCAB ruled in this matter, Claimant's Petition for Rehearing was premature. *See School District of Philadelphia v. Workmen's Compensation Appeal Board (McClary)*, 680 A.2d 36 (Pa.Cmwlth.1996). Thus, Claimant's request to present new evidence is properly considered a Petition for Remand under section 419 of the Act. However, after reviewing the relevant case law, we conclude that this distinction makes little difference in our analysis.

We have held that, even without a formal filing, a request for remand accompanied by relevant, newly discovered medical evidence, such as that presented by Claimant here, constitutes the equivalent of a formal petition for rehearing under section 426 of the Act. *Jones v. Workmen's Compensation Appeal Board (First Pennsylvania Bank)*, 76 Pa.Cmwlth. 345, 463 A.2d 1266 (1983). Further, we recognize that our courts have frequently analyzed remand issues under the same standards used in section 426 rehearing cases.

*See, e.g., Joseph v. Workmen's Compensation Appeal Board (Delphi Company)*, 522 Pa. 154, 560 A.2d 755 (1989); *Trudnak v. Workmen's Compensation Appeal Board (Lucky Strike Coal Corp.)*, 157 Pa.Cmwlth. 212, 629 A.2d 254 (1993); *Gateway Coal Company v. Workmen's Compensation Appeal Board (Laboda)*, 138 Pa.Cmwlth. 332, 588 A.2d 73, *appeal denied*, 528 Pa. 633, 598 A.2d 286 (1991); *Johnson v. Workmen's Compensation Appeal Board (Carter Footwear, Inc.)*, 122 Pa. Cmwlth. 404, 552 A.2d 331 (1988); *Crankshaw v. Workmen's Compensation Appeal Board (County of Allegheny)*, 120 Pa.Cmwlth. 148, 548 A.2d 368 (1988), *appeal denied*, 523 Pa. 633, 564 A.2d 1261 (1989); *Monaci v. Workmen's Compensation Appeal Board (Ward Trucking)*, 116 Pa. Cmwlth. 172, 541 A.2d 60 (1988); *Anam v. Workmen's Compensation Appeal Board (Hahnemann)*, 113 Pa.Cmwlth. 483, 537 A.2d 932 (1988); *Jones; see also Ogden Aviation v. Workmen's Compensation Appeal Board (Price)*, 134 Pa.Cmwlth. 389, 579 A.2d 444 (1990) (identifying a petition seeking remand for the presentation of after-discovered evidence, *filed prior to the WCAB's decision*, as a petition for rehearing under section 426 of the Act).

5. In his request for a remand or rehearing, Claimant sought to introduce new medical evidence, obtained subsequent to the decision of the WCJ, allegedly establishing that Claimant's disability resulted from his exposure to various dusts and metals in the course of his employment with Employer. Specifically, Claimant

asserts that the WCAB is empowered to remand a case to the WCJ only in two instances: (1) where the WCJ's findings are not supported by competent evidence; or (2) where the WCJ has failed to make a finding on a crucial issue, necessary for the proper application of the law. *Genovese v. Workmen's Compensation Appeal Board (National Record Mart, Inc.)*, 69 Pa.Cmwlth. 176, 450 A.2d 325 (1982). Employer maintains that where, as here, neither of these two situations exist, the WCAB may not remand to permit the presentation of additional evidence which was available at the time of the initial hearing.[6] *Id.* We recognize that there are cases which would restrict the WCAB's remand power to the two instances noted above, *see, e.g., Shustack v. Workmen's Compensation Appeal Board (B–D Mining Company)*, 141 Pa.Cmwlth. 296, 595 A.2d 719 (1991); *Genovese; Topps Chewing Gum, Inc. v. Workmen's Compensation Appeal Board*, 56 Pa.Cmwlth. 425, 425 A.2d 57 (1981); *Pepsi–Cola Bottling Company v. Workmen's Compensation Appeal Board*, 52 Pa.Cmwlth. 174, 417 A.2d 256 (1980); *LoRubbio v. Workmen's Compensation Appeal Board*, 49 Pa.Cmwlth. 529, 411 A.2d 866 (1980); however, we are not compelled to follow those cases under the circumstances presented here.

In fact, in *Joseph v. Workmen's Compensation Appeal Board (Delphi Company)*, 522 Pa. 154, 560 A.2d 755 (1989), our supreme court rejected the idea that the WCAB's remand powers were so precisely limited,[7] preferring instead to address the propriety of a remand in light of *Cudo v. Hallstead Foundry, Inc.*, 517 Pa. 553, 539 A.2d 792 (1988), in which our supreme court reaffirmed the broad discretion afforded the WCAB regarding the grant or denial of a rehearing based on after-discovered evidence.[8] In *Cudo*, our supreme court reversed this court for incorrectly binding the WCAB to the judicial standard that a new trial based on after-discovered evidence may be granted only if that evidence could not have been obtained at trial through an exercise of due diligence. Instead, the court concluded that, in order to effectuate the humanitarian purposes of the Act, the WCAB has broad power to grant a rehearing "when justice requires;"[9] it then applied this standard to

---

seeks to present the results of a three-day evaluation by Lee S. Newman, M.D., a Board-certified internist and pulmonologist, specializing in occupational medicine at the National Jewish Center for Immunology and Respiratory Medicine in Denver, Colorado, and an evaluation by Jerrold L. Abraham, M.D., a Board-certified pathologist, specializing in environmental and occupational pathology at the State University of New York in Syracuse, New York. Dr. Newman's evaluation included a high resolution CT scan, a methacholine challenge test and a fiberoptic bronchoscopy with transbronchial lung biopsy and bronchoalveolar lavage, all of which are sophisticated diagnostic tests that previously had not been performed on Claimant. Dr. Abraham then performed a quantitative microanalysis of the lung tissues forwarded by Dr. Newman, using scanning electron microscopy and energy dispersive x-ray analysis. (R.R. at 174a–227a.) Based on the results of their evaluations, both Dr. Newman and Dr. Abraham diagnosed Claimant as suffering from work-related pneumoconiosis. (R.R. at 177a–78a, 192a–94a, 227a.)

6. In denying Claimant's Petition for Remand, the WCAB agreed with Employer's position, stating that remand was improper because the WCJ already decided the issue of Claimant's medical condition by accepting the competent testimony of Dr. Fino as more credible and persuasive than

the testimony of Claimant's medical experts. Moreover, the WCAB determined that the medical evidence which Claimant now seeks to introduce would have been available to him prior to the close of the record before the WCJ. (WCAB op. at 6.)

7. We note that, with the exception of *Shustack*, all of the cases we cite as strictly limiting the WCAB's discretion to remand pre-dated our supreme court's decision in *Joseph*. Moreover, in *Shustack*, which was decided after *Joseph*, we relied on a 1987 commonwealth court opinion; it is that 1987 opinion, with its strict limitation on remand, which our supreme court vacated in *Joseph*.

8. The court noted:

The only statutory restriction upon the [WCAB] is that its discretion may be exercised "upon cause shown." 77 P.S. § 871. The appellate courts of this Commonwealth have ruled that the authority of the [WCAB] to grant a rehearing is to be liberally administered in the interest of the claimant.

*Cudo*, 517 Pa. at 557 n. 2, 539 A.2d at 794 n. 2 (citation omitted).

9. In *Cudo*, the court relied on *Greeby v. Philadelphia Asbestos Co.*, 120 Pa.Super. 9, 181 A. 452 (1935), an early case decided by the superior

permit a claimant to present additional medical evidence even though that evidence would have been available to the claimant through the exercise of due diligence. In subsequently applying the *Cudo* standard to the remand issue in *Joseph*, the court recognized that, although *Cudo* was a rehearing case brought under section 426 of the Act, its reasoning also applied to determine the propriety of remand; indeed, the court noted that "[w]here there has not already been a decision rendered by the [WCAB], recognition of the power to remand in the interest of efficient and fair resolution of claims is even more compelling than in cases where a decision has previously been rendered." *Joseph*, 522 Pa. at 159, 560 A.2d at 757. We now apply this same standard to the facts here.

In doing so, we initially note that the evidence Claimant desires to offer into evidence is both material and non-cumulative.[10] Drs. Newman and Abraham performed tests and procedures that had not been conducted by any of the medical experts who testified before the WCJ and, because these tests and procedures were far more sophisticated than any of those performed by the testifying doctors, they yielded new information as to the cause of Claimant's disability that previously had not come to light.

 Further, we dispute Employer's assertion that this medical evidence was readily available to Claimant at the time of the proceedings before the WCJ. In making this claim, Employer ignores the exceptional difficulties that Claimant endured in acquiring this new evidence; specifically, Claimant had to travel to Denver, Colorado in order to have the tests performed at a cost in excess of $9,000.00, excluding transportation. Because he had no source of income, it was only after Claimant's award of social security disability benefits with his concomitant entitlement to Medicare, (*see* R.R. at 228a–33a),

made shortly after the WCJ's decision, that Claimant could afford to travel to Denver for his evaluation by Dr. Newman. Once it became financially possible for Claimant to secure this evidence, he wasted no time in doing so. Here, Claimant testified credibly that he experienced symptoms often associated with pneumoconiosis and was, in fact, diagnosed with the disease. Because new and more elaborate testing, procured by Claimant at his earliest opportunity, produced medical information to support this testimony which was not readily ascertainable by the x-rays and other tests previously performed on Claimant, the WCAB should have granted Claimant a remand to present this new medical evidence for consideration by the WCJ. *See Johnson v. Workmen's Compensation Appeal Board (Carter Footwear, Inc.)*, 122 Pa.Cmwlth. 404, 552 A.2d 331 (1988); *Jones v. Workmen's Compensation Appeal Board (First Pennsylvania Bank)*, 76 Pa.Cmwlth. 345, 463 A.2d 1266 (1983).

 The WCAB should exercise its discretion to order a remand of a case where the interests of justice necessitate that result. After consideration of the unique facts here, and mindful of the reasoning in *Cudo* and *Joseph*, we believe that this case presents a situation where the interests of justice dictate a remand by the WCAB, and in refusing Claimant's remand request, the WCAB clearly failed to administer its authority to grant a rehearing liberally in favor of Claimant's interest. Thus, we hold that the WCAB abused its discretion in denying Claimant's Petition for Remand.

Accordingly, we reverse that portion of the WCAB's order denying Claimant's Petition for Remand, and we remand with instructions that the requested hearing be granted. In addition, we vacate the WCAB's order

---

court, as providing the standard against which the WCAB's discretion should be measured. In *Greeby*, the court stated:

> One of the purposes of the workmen's compensation laws is to give a claimant full opportunity to present whatever competent evidence he desires to reach the merits of the case. In harmony with this liberal tendency, the courts have held that the [WCAB] has broad powers to grant a rehearing when justice requires. . . .

*Id.* at 453.

10. We recognize that a rehearing is not permitted simply for the purpose of strengthening weak proofs which have already been presented or for the purpose of hearing additional testimony which is merely cumulative. *Paxos v. Workmen's Compensation Appeal Board (Frankford–Quaker Grocery)*, 158 Pa.Cmwlth. 355, 631 A.2d 826 (1993).

with respect to Claimant's Claim Petition pending the holding of a rehearing on remand.[11]

### ORDER

AND NOW, this 11th day of February, 1999, the order of the Workers' Compensation Appeal Board (WCAB), dated May 30, 1997, is hereby vacated to the extent that it affirms the decision of the workers' compensation judge (WCJ) to deny the Claim Petition filed by Anton Puhl (Claimant). The WCAB's order is reversed to the extent that it denies Claimant's Petition for Remand, and the case is remanded to the WCAB with instructions that a hearing be held before the WCJ to consider the after-discovered medical evidence described in this opinion.

Jurisdiction relinquished.

KELLEY, Judge, dissenting.

I respectfully dissent. The majority recognizes that a rehearing is not permitted simply for the purpose of strengthening weak proofs, which have already been presented, or for the purpose of hearing additional testimony, which is merely cumulative. *See Paxos v. Workmen's Compensation Appeal Board (Frankford–Quaker Grocery)*, 158 Pa. Cmwlth. 355, 631 A.2d 826 (1993). Despite this axiom, the majority concludes that the evidence which Claimant wishes to introduce on remand in this case is not merely cumulative or being presented for the purpose of strengthening weak proofs. I disagree.

The majority correctly concludes, based on our Supreme Court's decisions in *Joseph v. Workmen's Compensation Appeal Board (Delphi Company)*, 522 Pa. 154, 560 A.2d

755 (1989) and *Cudo v. Hallstead Foundry, Inc.*, 517 Pa. 553, 539 A.2d 792 (1988), that the board has broad power to grant a rehearing where justice requires. The majority then goes on to conclude, based on the unique facts of this case, that justice dictates a remand by the board and in refusing claimant's remand request, the board clearly failed to administer its authority to grant a rehearing liberally in favor of Claimant's interest.

While it is true that the new medical tests performed were more elaborate than those previously performed on Claimant, this new medical evidence Claimant wishes to introduce at a hearing on remand simply buttresses Claimant's claim that he is disabled from pneumoconiosis. The WCJ clearly rejected Claimant's medical evidence that Claimant was disabled as a result of pneumoconiosis as equivocal. This was well within the WCJ's province.[1]

Moreover, the reasons given by the majority as to why this case is so unique, *i.e.*, Claimant's lack of funds to secure the new medical evidence until his award of social benefits and the cost of the new testing, were presented to the board in Claimant's request for remand. *See* Reproduced Record at 180a–82a. Thus, the board was aware of Claimant's situation and, in its discretion, still denied Claimant's request for a remand. Therefore, the majority's reversal in this case of the board's order denying Claimant's request for a remand infringes upon the board's broad authority to grant or deny a request for remand. As such, I disagree with the majority's decision, which gives Claimant a second bite at the apple after losing before the WCJ.

11. On appeal from the WCAB's decision to affirm the denial of Claimant's Claim Petition, Claimant argues that a remand to the WCJ is required because: (1) the WCJ's decision was based on mutually inconsistent findings of fact; (2) the WCJ's findings that Claimant's daily activities were limited by his wife's activities rather than by his respiratory problems were not supported by substantial evidence; (3) the WCJ's decision held Claimant to an improperly high burden of proof; and (4) the WCJ improperly rejected the testimony of Claimant's B reader, Dr. Fisher, as equivocal. However, because of our disposition of Claimant's argument on the WCAB's denial of his Petition for Remand, we need not address these other arguments.

1. The WCJ, as the ultimate fact finder in workers' compensation cases, has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa.Cmwlth. 461, 593 A.2d 921 (1991), *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991).

Accordingly, I would affirm the board's order.